Ralph WRIGHT, Appellant,

v.

The STATE of Texas, Appellee.

No. 57785.

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 28, 1979.

Rehearing Denied Jan. 9, 1980.

---

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Jan E. Potts and David C. Schick, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and ODOM, JJ.

## OPINION

DOUGLAS, Judge.

Ralph Wright appeals his conviction for aggravated robbery. Punishment was assessed by the jury at fifty years.

Wright contends that his alibi witness was improperly impeached on a collateral matter with evidence that showed an extraneous offense. He also challenges the sufficiency of the evidence to prove that a deadly weapon was used.

Oscar Smith, a college student, was working at an independent service station on the evening of December 23, 1976. Appellant approached Smith, pulled a weapon which Smith referred to as a "gun", "revolver" and a "pistol", at different places in the record. Appellant demanded the money which Smith gave him. Appellant then drove off in his car.

■ Wright contends that this evidence does not show that a "deadly weapon" was used. The use of a "deadly weapon" is an essential element of aggravated robbery. V.T.C.A., Penal Code, Section 29.03. A firearm is per se a deadly weapon. V.T.C.A., Penal Code, Section 1.07(a)(11)(A). Appellant argues that evidence is sufficient only if the witness uses the term "firearm" or otherwise proves the use of a "deadly weapon" under one of the alternative definitions. We disagree. Testimony using any of the terms "gun", "pistol" or "revolver" is sufficient to authorize the jury to find that a deadly weapon was used.

■ Wright next complains of the use of a prior conviction to impeach his alibi witness on a collateral matter. Iris Wright, appellant's mother, testified that appellant was at home with her at the time of the robbery. As part of the preliminary questions asked of her on direct, the following exchange occurred:

"Q. Mrs. Wright, back in December of 1976, which is just December that we have just had, was Ralph living with you at that time?

"A. Yes, he was.

"Q. All right, how long had he been living with you there?

"A. Well, he had been living with me, I would say about—I would say about six or seven years."

On cross-examination, she was questioned further on this matter:

"Q. Nine years he's been living in your home?

"A. Yes.

"Q. Did he live in your home in November of 1976?

"A. Yes.

"Q. And October?

"A. Yes.

"Q. And September?

"A. Yes.

"Q. Where did he live in June and July and August of 1973, did he live at home then?

"A. Yes.

"Q. Are you sure he was living at home then?

"A. Yes, uh-huh, he was.

"Q. Starting in June, the last part of June of 1973—"

At this point, appellant objected and a hearing was held outside the presence of the jury. The State then elicited from Mrs. Wright that her son was not living with her from the summer of 1973 until sometime in 1975 because he was in prison.

In *Bryant v. State,* 471 S.W.2d 66 (Tex. Cr.App.1971), we were confronted with a similar situation. Bryant's alibi witness, James Duncan, testified that he and Bryant were in Arkansas at the time of the robbery. He also testified that he first met appellant in September, 1969 at a Dallas bar owned by Duncan. Duncan was asked if he knew that Bryant was in the penitentiary in September, 1969, and was not released until October 14, 1969. In overruling Bryant's contention, we held, "The question was proper to test the knowledge and credibility of appellant's witness."

In the instant case, Mrs. Wright established an alibi. Her credibility and objectivity were seriously questioned when it was shown that she made a blanket statement which was factually incorrect. This impeachment was probative.

Also, Mrs. Wright's direct testimony tended to create a false impression with the jury. If appellant had lived with his mother for several years prior to this incident, the jury could infer that he was a law-abiding and fairly respectable citizen. His trip to the penitentiary casts Mrs. Wright's testimony in an entirely different light.

Mrs. Wright made a factually incorrect statement on direct examination. Impeachment evidence indicated that her objectivity in matters concerning her son was suspect and eliminated a false impression concerning her son. The evidence was relevant and properly admitted.

There is no reversible error. The judgment is affirmed.