COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-257-CR

 

 

CURTIS R. MOFFETT                                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 396TH  DISTRICT COURT
OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Curtis R. Moffett
appeals his convictions for murder, solicitation of capital murder, and felon
in possession of a firearm.  In two
points, appellant contends that the trial court erred by allowing the State=s investigator, who was in the courtroom, to testify even though the
Rule had been invoked and that the evidence was factually insufficient to
support his conviction for felon in possession of a firearm.  We affirm.

II.  Background Facts

On December 4, 2005, sometime
after 12:00 a.m., Pauline Choice was asleep at her mother=s house when she was awakened by appellant, Choice=s cousin, knocking on the front door of the house.  Appellant was upset and told Choice that
$35,000 was missing from his apartment.[2]  Appellant then accused Choice, Kevin Jackson,
and Dwayne Gratts of taking the money. 
According to Choice, appellant pointed a chrome handgun that he had with
him at her. 

Appellant then drove Choice
to his apartment and had her make a police report about the burglary.  Choice did not tell the police that anything
was missing from the apartment.  After
making the police report, appellant, Choice, and appellant=s girlfriend and baby drove to Jackson=s house so that appellant could get his money back.[3]  After nobody answered the door, they drove
back to Choice=s mother=s house.     








Later that day, Choice went
back to the apartment with appellant. Roderick Young was also there.  Appellant then counted out $10,000 and handed
it to Choice to recount.  After
recounting the money, Choice handed it back to appellant who gave it to Young.  Choice testified that appellant gave the
money to Young to kill Dwayne.  

After learning from Choice
that appellant wanted to talk to him about the missing money, Dwayne called
appellant and told him to meet him at his mother=s house.  Appellant stated that
he was in the middle of something, but that he would come over.   

That night, at approximately
11:00 p.m., Dwayne, his brother, Earl Gratts, and a friend, Lavord McDonald,
were sitting in Dwayne=s car
outside Dwayne=s mother=s house waiting for appellant when they noticed a car parked down the
street with its headlights on.  Dwayne
testified that shortly after the car drove away, a man approached the house and
asked Dwayne, Earl, and Lavord if they had any weed.  After answering Ano@ and telling
the man to Ajust move
on,@ Dwayne stated that the man began to walk up the street.  








At that time, Earl got out of
the car to see who the man was.  Dwayne
stated that after the man and Earl talked for approximately two-to-three
minutes, the man pulled out a gun and began shooting at Earl.  Earl later died from the gunshot wounds.[4]  Both appellant and Young were arrested for the
murder.  

On June 22, 2007, a jury
found appellant guilty of murder, solicitation of capital murder, and felon in
possession of a firearm.[5]  On July 6, 2007, after finding the habitual
offender notice to be true, the trial judge sentenced appellant to life
imprisonment for each count, to run concurrently.   

III.  Violation of the Rule

In his first point, appellant
argues that the trial court erred by allowing Elvis Wells, a Tarrant County
District Attorney=s Office
investigator, to testify as a rebuttal witness in violation of the Rule.  See TEX. R. EVID. 614.  The State contends that although Wells was in
the courtroom during Thomas McClure=s testimony, the trial court did not abuse its discretion by allowing
Wells to testify.   








Rule 614 of the Texas Rules
of Evidence provides in relevant part that A[a]t the request of a party the court shall order witnesses excluded
so that they cannot hear the testimony of other witnesses, and it may make the
order of its own motion.@  Id. 
The purpose of the Rule is to prevent the testimony of one witness
from influencing the testimony of another. 
Russell v. State, 155 S.W.3d 176, 179 (Tex. Crim. App.
2005).  If a witness violates the Rule by
remaining in the courtroom after the Rule is invoked, the testimony of that
witness may be admitted or excluded at the trial court=s discretion.  Bell v. State,
938 S.W.2d 35, 50 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827
(1997).  

On appeal, the trial court=s ruling to admit testimony will not be disturbed absent an abuse of
discretion.  Guerra v. State, 771
S.W.2d 453, 474 (Tex. Crim. App. 1988), cert. denied, 492 U.S. 925
(1989).  A two-step approach must be
taken when initially answering the question of whether a trial court has abused
its discretion by allowing a violation of the Rule.  Id. at 476; Loven v. State, 831
S.W.2d 387, 399 (Tex. App.CAmarillo 1992, no pet.).  








The first step is to
ascertain what type of witness was involved.  Loven, 831 S.W.2d at 399.  If the witness was one who had no connection
with either the State=s
case-in-chief or the defendant=s case-in-chief and who, because of lack of personal knowledge
regarding the offense was not likely to be called as a witness, no abuse of
discretion can be shown.  Guerra,
771 SW.2d at 476; Loven, 831 S.W.2d at 399.  On the other hand, if the witness was one who
had personal knowledge of the offense and who the party clearly anticipated
calling to the stand, then the appellate court should then turn to the second
step of the analysis.  Guerra, 771
S.W.2d at 476. 

Under the second step, an
appellate court must determine whether the defendant was harmed.  Bell, 938 S.W.2d at 50.  Harm is established when (1) the witness
actually conferred with or heard testimony of other witnesses, and (2) the
witness=s testimony contradicted testimony of a witness from the opposing side
or corroborated testimony of a witness he had conferred with or heard.  Id. (citing Webb v. State, 766
S.W.2d 236, 240 (Tex. Crim. App. 1989)). 


At trial, McClure testified
that on December 12, 2005, he was high on drugs when he gave a written
statement to Detective Mike Carroll of the Fort Worth Police Department
implicating Young and appellant in Earl=s murder.  He said that he did
not remember giving the statement despite it being in his handwriting.  McClure further stated that he did not
remember having a conversation with Young about the murder.  Additionally, McClure testified that he did
not recall meeting with the prosecution about the case while he was in the
Tarrant County Jail because he was still on crack and ecstasy, despite being in
jail for six weeks. 








Wells testified as a rebuttal
witness for the State only as to what transpired during McClure=s meeting with the prosecutors. 
Wells testified that on June 5, 2007, he transported McClure from the
Tarrant County Jail to a conference room in the District Attorney=s Office to meet with the prosecutors in this case.  Wells was present during the meeting.  Wells said that during the meeting, McClure
did not appear high, drunk, or intoxicated. 
Wells stated that McClure read over a statement that he had previously
given to the Fort Worth Police Department and made a few corrections on the
statement.  McClure, however, never said
that his statement was a lie.   

Wells did not have personal
knowledge of the offense.  And the record
shows that the State did not intend to call Wells as a witness until after
McClure testified that he was high when he met with the District Attorney=s Office.  At that time, the
State found it necessary to call Wells to rebut McClure=s testimony.  Additionally, we determine
that Wells was not connected with either the State=s case-in-chief or appellant=s case-in-chief.  See Loven,
831 S.W.2d at 399. 








Appellant cites to Coots
v. State to support his contention that the trial court abused its
discretion.  826 S.W.2d 955 (Tex. App.CHouston [1st Dist.] 1992, no pet.). 
In Coots, the court of appeals held that the trial court abused
its discretion by allowing a bailiff to testify as a rebuttal witness for the
prosecution.  Id. at 960B61.  The prosecution argued that
the trial court did not have to exclude the bailiff from the courtroom because
it did not plan on calling the bailiff as a witness until after the defense
presented evidence that a electronic monitoring bracelet could only be removed
by cutting it.  Id. at 960.  However, the court of appeals determined that
the bailiff should have been excluded because the prosecutor was aware that the
defense was going to rely on the electronic monitoring bracelet to prove his
alibi.  Id. at 960B61.  

Here, unlike in Coots,
the State was not made aware that it was going to call Wells to testify until
after McClure=s testimony
claiming that he was high and that he did not remember even making the
statement.  Additionally, McClure and
Wells were both witnesses for the State. 
Coots is thus distinguishable from the present case.  Accordingly, we hold that the trial court did
not abuse its discretion by allowing Wells to testify because the record
demonstrates that Wells had no connection with either party=s case-in-chief and had no personal knowledge of the offense.[6]  Thus, we overrule appellant=s first point.

IV.  Factual Sufficiency

In his second point,
appellant asserts that the evidence is factually insufficient to support his
conviction for felon in possession of a firearm.  








A.  Standard of Review

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant evidence
that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding
on factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which
ground.  Goodman v. State, 66
S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 7.    

B.  Analysis








To prove unlawful possession
of a firearm by a felon, the State must establish that the accused was
previously convicted of a felony offense and possessed a firearm after the
conviction and before the fifth anniversary of his release from confinement or
from supervision under community supervision, parole, or mandatory supervision,
whichever date is later.  Tex. Penal Code Ann. ' 46.04(a) (Vernon Supp. 2008). 
Possession is defined as Aactual care, custody, control, or management.@  Id. ' 1.07(a)(39) (Vernon Supp. 2008). 
A Afirearm@ is Aany device
designed, made, or adapted to expel a projectile through a barrel by using the
energy generated by an explosion or burning substance or any device readily
convertible to that use.@  Id. ' 46.01(3) (Vernon Supp. 2008). 

Here, Choice was the only
witness to testify that appellant had a handgun.  She testified that on December 4, 2005, after
she was awakened by appellant at her mother=s house, appellant accused her, Jackson, and Dwayne of taking $35,000
from his apartment.  Choice stated that
appellant pointed a gun at her and that she thought that appellant wanted to
kill her.  She stated that it was a chrome
handgun, although she could not tell if it was a revolver or an automatic.  Choice testified that the handgun was either
a 9mm or .45. She further stated that appellant made her call Jackson and ask
him to come over to her mother=s house because appellant stated that he Awanted to shoot [Jackson] in the head.@ 








Appellant argues that the
evidence is factually insufficient to show that he was in possession of a
firearm because neither Choice nor any other witness testified that appellant
actually possessed a firearm.  He argues
that Choice=s testimony
proves that appellant possessed something that resembled a firearm, but does
not show that he actually possessed a firearm. 

However, Choice did testify
that appellant had a handgun.  She stated
several times that appellant had a Agun in his hand.@  The fact that Choice could not identify the
caliber or whether the handgun was an automatic or revolver is immaterial.  Choice stated that appellant had a chrome
handgun and that he was pointing it at her. 
See Wright v. State, 591 S.W.2d 458, 459 (Tex. Crim. App.
1979) (holding that terms Agun,@ Apistol,@ or Arevolver@ are
sufficient to authorize jury to find deadly weapon used); Privett v. State,
635 S.W.2d 746, 752 (Tex. App.CHouston [1st Dist.] 1982, pet. ref=d) (determining that victim=s statement that defendant possessed a Agun@ or Apistol@ was
sufficient to show use of firearm).    








        Deferring, as we must, to the jury=s resolution of contradictory testimony and evaluation of credibility
and demeanor, we cannot say that the evidence is so weak that the verdict is
clearly wrong and manifestly unjust nor that the conflicting evidence so
greatly outweighs the evidence supporting the verdict that the jury=s determination is manifestly unjust. 
See Johnson, 23 S.W.3d at 8. 
Accordingly, we overrule appellant=s second point.

V.  Conclusion

Having overruled appellant=s two points, we affirm the trial court=s judgment.

 

PER CURIAM 

 

PANEL: 
LIVINGSTON, DAUPHINOT, AND MCCOY, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: August 21, 2008











[1]See Tex. R. App. P. 47.4.





[2]Although
appellant was living in the apartment, Choice used to live in the apartment,
the apartment was in Choice=s name, and Choice made the monthly
rent payments.   





[3]Choice
admitted that she took appellant to a home that Jackson used to live in, not
the house that he was currently living in, because she did not want Jackson to
get hurt.





[4]Choice
testified that appellant told her that the wrong person had died that night,
that Dwayne, not Earl, was supposed to have been killed.   





[5]Appellant
was acquitted of one count of capital murder. 






[6]Because
we determine that Wells did not have personal knowledge of the offense, we need
not determine whether appellant was harmed under the second step of the
analysis.