

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 2-07-257-CR**

CURTIS R. MOFFETT — APPELLANT

V.

THE STATE OF TEXAS — STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Curtis R. Moffett appeals his convictions for murder, solicitation of capital murder, and felon in possession of a firearm. In two points, appellant contends that the trial court erred by allowing the State's investigator, who was in the courtroom, to testify even though the Rule had been invoked and that the

[1] *See* TEX. R. APP. P. 47.4.

evidence was factually insufficient to support his conviction for felon in possession of a firearm. We affirm.

## II. Background Facts

On December 4, 2005, sometime after 12:00 a.m., Pauline Choice was asleep at her mother's house when she was awakened by appellant, Choice's cousin, knocking on the front door of the house. Appellant was upset and told Choice that $35,000 was missing from his apartment.[2] Appellant then accused Choice, Kevin Jackson, and Dwayne Gratts of taking the money. According to Choice, appellant pointed a chrome handgun that he had with him at her.

Appellant then drove Choice to his apartment and had her make a police report about the burglary. Choice did not tell the police that anything was missing from the apartment. After making the police report, appellant, Choice, and appellant's girlfriend and baby drove to Jackson's house so that appellant could get his money back.[3] After nobody answered the door, they drove back to Choice's mother's house.

---

[2] Although appellant was living in the apartment, Choice used to live in the apartment, the apartment was in Choice's name, and Choice made the monthly rent payments.

[3] Choice admitted that she took appellant to a home that Jackson used to live in, not the house that he was currently living in, because she did not want Jackson to get hurt.

Later that day, Choice went back to the apartment with appellant. Roderick Young was also there. Appellant then counted out $10,000 and handed it to Choice to recount. After recounting the money, Choice handed it back to appellant who gave it to Young. Choice testified that appellant gave the money to Young to kill Dwayne.

After learning from Choice that appellant wanted to talk to him about the missing money, Dwayne called appellant and told him to meet him at his mother's house. Appellant stated that he was in the middle of something, but that he would come over.

That night, at approximately 11:00 p.m., Dwayne, his brother, Earl Gratts, and a friend, Lavord McDonald, were sitting in Dwayne's car outside Dwayne's mother's house waiting for appellant when they noticed a car parked down the street with its headlights on. Dwayne testified that shortly after the car drove away, a man approached the house and asked Dwayne, Earl, and Lavord if they had any weed. After answering "no" and telling the man to "just move on," Dwayne stated that the man began to walk up the street.

At that time, Earl got out of the car to see who the man was. Dwayne stated that after the man and Earl talked for approximately two-to-three minutes, the man pulled out a gun and began shooting at Earl. Earl later died

from the gunshot wounds.[4] Both appellant and Young were arrested for the murder.

On June 22, 2007, a jury found appellant guilty of murder, solicitation of capital murder, and felon in possession of a firearm.[5] On July 6, 2007, after finding the habitual offender notice to be true, the trial judge sentenced appellant to life imprisonment for each count, to run concurrently.

## III. Violation of the Rule

In his first point, appellant argues that the trial court erred by allowing Elvis Wells, a Tarrant County District Attorney's Office investigator, to testify as a rebuttal witness in violation of the Rule. *See* TEX. R. EVID. 614. The State contends that although Wells was in the courtroom during Thomas McClure's testimony, the trial court did not abuse its discretion by allowing Wells to testify.

Rule 614 of the Texas Rules of Evidence provides in relevant part that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." *Id.* The purpose of the Rule is to prevent the testimony of

---

[4] Choice testified that appellant told her that the wrong person had died that night, that Dwayne, not Earl, was supposed to have been killed.

[5] Appellant was acquitted of one count of capital murder.

one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). If a witness violates the Rule by remaining in the courtroom after the Rule is invoked, the testimony of that witness may be admitted or excluded at the trial court's discretion. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996), *cert. denied,* 522 U.S. 827 (1997).

On appeal, the trial court's ruling to admit testimony will not be disturbed absent an abuse of discretion. *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988), *cert. denied*, 492 U.S. 925 (1989). A two-step approach must be taken when initially answering the question of whether a trial court has abused its discretion by allowing a violation of the Rule. *Id.* at 476; *Loven v. State*, 831 S.W.2d 387, 399 (Tex. App.—Amarillo 1992, no pet.).

The first step is to ascertain what type of witness was involved. *Loven*, 831 S.W.2d at 399. If the witness was one who had no connection with either the State's case-in-chief or the defendant's case-in-chief and who, because of lack of personal knowledge regarding the offense was not likely to be called as a witness, no abuse of discretion can be shown. *Guerra*, 771 SW.2d at 476; *Loven*, 831 S.W.2d at 399. On the other hand, if the witness was one who had personal knowledge of the offense and who the party clearly anticipated

calling to the stand, then the appellate court should then turn to the second step of the analysis. *Guerra*, 771 S.W.2d at 476.

Under the second step, an appellate court must determine whether the defendant was harmed. *Bell*, 938 S.W.2d at 50. Harm is established when (1) the witness actually conferred with or heard testimony of other witnesses, and (2) the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard. *Id.* (citing *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989)).

At trial, McClure testified that on December 12, 2005, he was high on drugs when he gave a written statement to Detective Mike Carroll of the Fort Worth Police Department implicating Young and appellant in Earl's murder. He said that he did not remember giving the statement despite it being in his handwriting. McClure further stated that he did not remember having a conversation with Young about the murder. Additionally, McClure testified that he did not recall meeting with the prosecution about the case while he was in the Tarrant County Jail because he was still on crack and ecstasy, despite being in jail for six weeks.

Wells testified as a rebuttal witness for the State only as to what transpired during McClure's meeting with the prosecutors. Wells testified that

on June 5, 2007, he transported McClure from the Tarrant County Jail to a conference room in the District Attorney's Office to meet with the prosecutors in this case. Wells was present during the meeting. Wells said that during the meeting, McClure did not appear high, drunk, or intoxicated. Wells stated that McClure read over a statement that he had previously given to the Fort Worth Police Department and made a few corrections on the statement. McClure, however, never said that his statement was a lie.

Wells did not have personal knowledge of the offense. And the record shows that the State did not intend to call Wells as a witness until after McClure testified that he was high when he met with the District Attorney's Office. At that time, the State found it necessary to call Wells to rebut McClure's testimony. Additionally, we determine that Wells was not connected with either the State's case-in-chief or appellant's case-in-chief. *See Loven*, 831 S.W.2d at 399.

Appellant cites to *Coots v. State* to support his contention that the trial court abused its discretion. 826 S.W.2d 955 (Tex. App.—Houston [1st Dist.] 1992, no pet.). In *Coots*, the court of appeals held that the trial court abused its discretion by allowing a bailiff to testify as a rebuttal witness for the prosecution. *Id.* at 960–61. The prosecution argued that the trial court did not have to exclude the bailiff from the courtroom because it did not plan on calling

the bailiff as a witness until after the defense presented evidence that a electronic monitoring bracelet could only be removed by cutting it. *Id.* at 960. However, the court of appeals determined that the bailiff should have been excluded because the prosecutor was aware that the defense was going to rely on the electronic monitoring bracelet to prove his alibi. *Id.* at 960–61.

Here, unlike in *Coots*, the State was not made aware that it was going to call Wells to testify until after McClure's testimony claiming that he was high and that he did not remember even making the statement. Additionally, McClure and Wells were both witnesses for the State. *Coots* is thus distinguishable from the present case. Accordingly, we hold that the trial court did not abuse its discretion by allowing Wells to testify because the record demonstrates that Wells had no connection with either party's case-in-chief and had no personal knowledge of the offense.[6] Thus, we overrule appellant's first point.

## IV. Factual Sufficiency

In his second point, appellant asserts that the evidence is factually insufficient to support his conviction for felon in possession of a firearm.

---

[6] Because we determine that Wells did not have personal knowledge of the offense, we need not determine whether appellant was harmed under the second step of the analysis.

### A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in

the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

**B. Analysis**

To prove unlawful possession of a firearm by a felon, the State must establish that the accused was previously convicted of a felony offense and

possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from supervision under community supervision, parole, or mandatory supervision, whichever date is later. TEX. PENAL CODE ANN. § 46.04(a) (Vernon Supp. 2008). Possession is defined as "actual care, custody, control, or management." *Id.* § 1.07(a)(39) (Vernon Supp. 2008). A "firearm" is "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." *Id.* § 46.01(3) (Vernon Supp. 2008).

Here, Choice was the only witness to testify that appellant had a handgun. She testified that on December 4, 2005, after she was awakened by appellant at her mother's house, appellant accused her, Jackson, and Dwayne of taking $35,000 from his apartment. Choice stated that appellant pointed a gun at her and that she thought that appellant wanted to kill her. She stated that it was a chrome handgun, although she could not tell if it was a revolver or an automatic. Choice testified that the handgun was either a 9mm or .45. She further stated that appellant made her call Jackson and ask him to come over to her mother's house because appellant stated that he "wanted to shoot [Jackson] in the head."

Appellant argues that the evidence is factually insufficient to show that he was in possession of a firearm because neither Choice nor any other witness testified that appellant actually possessed a firearm. He argues that Choice's testimony proves that appellant possessed something that resembled a firearm, but does not show that he actually possessed a firearm.

However, Choice did testify that appellant had a handgun. She stated several times that appellant had a "gun in his hand." The fact that Choice could not identify the caliber or whether the handgun was an automatic or revolver is immaterial. Choice stated that appellant had a chrome handgun and that he was pointing it at her. *See Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979) (holding that terms "gun," "pistol," or "revolver" are sufficient to authorize jury to find deadly weapon used); *Privett v. State*, 635 S.W.2d 746, 752 (Tex. App.—Houston [1st Dist.] 1982, pet. ref'd) (determining that victim's statement that defendant possessed a "gun" or "pistol" was sufficient to show use of firearm).

Deferring, as we must, to the jury's resolution of contradictory testimony and evaluation of credibility and demeanor, we cannot say that the evidence is so weak that the verdict is clearly wrong and manifestly unjust nor that the conflicting evidence so greatly outweighs the evidence supporting the verdict

that the jury's determination is manifestly unjust. *See Johnson*, 23 S.W.3d at 8. Accordingly, we overrule appellant's second point.

### V. Conclusion

Having overruled appellant's two points, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, DAUPHINOT, AND MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 21, 2008