

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-08-012-CR**

GERALD DEWAYNE LUSK                                         APPELLANT

V.

THE STATE OF TEXAS                                               STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In three points, Appellant Gerald Lusk appeals his conviction for aggravated robbery with a deadly weapon.  We affirm.

### I. Factual and Procedural History

Samuel Escalante, the complainant, testified that as he washed his wife's SUV at a self-service car wash around 10:30 p.m., Lusk approached him from

---

[1] *See* Tex. R. App. P. 47.4.

behind, held a gun on him, and demanded his wallet. Escalante testified that he gave his wallet to Lusk after Escalante's wife opened the passenger side door to find out what was happening and Lusk turned the weapon on her. Lusk left with the wallet, and Escalante's wife called 911 from her cell phone.

Escalante described Lusk as wearing orange shorts and a dark blue tank top. He described the gun as follows:

> It was a black gun. It had—it was not a revolver. And the handle looked wooden. He was covering most of it because his hands were pretty big, and so I didn't really see the handle, but it looked wooden to me. . . . But it looked real, and I didn't want to find out if it was real.

He testified that it did not look like something that had been painted, that he did not see anything on it that would make him think that it was a toy gun, and that Lusk used it as if it were a real gun.

Escalante's wallet contained his driver's license, social security card, and insurance card, a photo of his daughter, a gas credit card, and work licenses. The robbery occurred August 20, 2006.

On August 21, Fort Worth police officers responded to a trespassing complaint from the manager of the Interstate Motel, located two to four miles from the car wash. The manager complained of three men that she wanted off of the property, but she only had a valid trespassing warning against one of them—Lusk. Former officer Waylon Jepson testified that he had Lusk, as the

2

largest of the three men, sit on the ground for officer safety while they waited for confirmation on the trespass warning. When he received confirmation, he arrested Lusk. When Lusk stood up, Escalante's driver's license, social security card, and other items fell out of the orange shorts that Lusk wore. The police did not discover the gun or Escalante's wallet in Lusk's belongings.

A few days later, the police separately showed photo lineups to Escalante and his wife. They each identified Lusk as the man who had robbed Escalante. At trial, Escalante's wife testified, "I am a hundred percent sure of this man's face."

Lusk testified that he did not rob Escalante, that he had never seen Escalante or his wife before, and that he had never been to that car wash. He testified that he did not go out the night of August 20 and that someone else had his clothing, including the orange shorts, during that time. He admitted that Escalante's property fell out of his pocket and that the orange shorts were his, but he denied committing the robbery.

The jury found Lusk guilty of aggravated robbery with a deadly weapon. Lusk pleaded true to the allegations in the Habitual Offender Notice, the jury assessed punishment of sixty years' confinement, and the trial court entered judgment on the verdict and punishment. This appeal followed.

## II. Legal and Factual Sufficiency of the Evidence

In his first two points, Lusk argues that the evidence was legally and factually insufficient to convict him of aggravated robbery with a deadly weapon.

### A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23

S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

**B. Aggravated Robbery with a Deadly Weapon**

Lusk's only complaint with regard to sufficiency is that the evidence was legally and factually insufficient to show that a deadly weapon was used or exhibited, arguing that Escalante was not sure if he saw a firearm and that the jury notes reflect that the jury's concern was whether the police thought a firearm was used.

A person commits aggravated robbery with a deadly weapon if, in the course of committing a theft, he intentionally, knowingly, or recklessly causes bodily injury to another or places another in fear of such imminent bodily injury or death by using or exhibiting a deadly weapon. *See* Tex. Penal Code Ann. §§ 29.02–.03 (Vernon 2003). A "deadly weapon" is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *Id*. § 1.07(a)(17)(A) (Vernon Supp. 2008). Testimony using any of the terms "gun," "pistol," or "revolver" is sufficient to authorize the jury to find that a deadly weapon was used. *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979); *Privett v. State*, 635 S.W.2d 746, 752 (Tex.

5

App.—Houston [1st Dist.] 1982, pet. ref'd) (holding that victim's statement that defendant displayed a "gun" or "pistol" during the robbery was sufficient to show use of firearm); *see also Brown v. State*, 212 S.W.3d 851, 860–63 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (op. on reh'g) (holding that victim's testimony that he did not know if the gun was real but that it felt cold against his skin was not sufficient to contradict the jury's firearm finding when victim also testified that he was afraid and his wife testified that it was a gun), *cert. denied*, 128 S. Ct. 1088 (2008); *Arcenaux v. State*, 177 S.W.3d 928, 931 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding that the evidence was sufficient when victim testified that he never saw the gun but believed that defendant had a gun and feared for his life when the defendant told him that he had a gun).

Of the eight notes that the jury submitted, two involved what the police officers had been told by the complainant.

> Jury Note #5:      Need testimony from either of the police officers that state the victims reported that a gun was used in the robbery.
>
> Jury Note #7:      We are in dispute as to whether officer[']s statement said that the accused was armed during the robbery.

The trial court responded with four pages of trial transcript from Jepson's testimony. Jepson testified that on August 20, 2006, "A call came in from

911, a victim had reported he had been robbed at gunpoint at the car wash," and that the complainants described a black handgun as having been used.

Notwithstanding Jepson's testimony and Lusk's argument, we must review all of the evidence in order to determine whether any rational trier of fact could have found beyond a reasonable doubt that Lusk used or exhibited a deadly weapon. *See Clayton*, 235 S.W.3d at 778.

Escalante testified that he first saw Lusk by a pay phone and that Lusk asked him for a quarter. Escalante told him that he needed his change for the car wash and resumed washing his vehicle. He then testified:

> When I—I started to work my way back around to the point where I started at, and for—I don't know what it was, but I could almost feel the presence of someone really, really close to me, and so it was weird because I had never felt nothing like that before. I just—something made me turn around, and I could—and he was very close to where I was, just a few feet away. And so when—when I turned around and I saw him, he had a gun in one hand, in the right hand, and with the left hand, he was going, "Shh. Give me your money, or I'll kill you. Give me your wallet, or I'll kill you."

When Lusk's counsel asked, "Do you know for sure if this was a real firearm or not?" Escalante replied, "Did he shoot it off or do I know, no, I don't." On redirect, the State asked:

Q. What makes you think it was a real gun?

A. Well, it looked real enough to me. You know, I don't know what makes you feel it's a real gun, but, I mean, whenever

7

somebody has a gun to you and they're using it in that kind of manner, I mean, it's real enough.

Q.    Seen many toy guns with wooden grips?

A.    No. No, ma'am.

Q.    Did it look like—think defense counsel mentioned this sometime—carved soap painted black? Did it look like that?

A.    No, it didn't look like a toy of any kind. I've been around long enough to know the difference between a toy gun and a real gun, and if it had a wooden—if it looked plastic or had anything orange on it, no, I wouldn't have cooperated with him.

Q.    From you looking at the gun, you said it was pointed at your stomach, did you think it was a real gun?

A.    I did.

Lusk's counsel followed these questions with his own:

Q.    I mean, if you had thought there was no real—this was a real gun—if it had been painted candy apple red, there probably would have been at least a fight there?

A.    Yeah, he probably would have ate that gun that night.

Q.    Okay. But for whatever reason, you felt it was a real gun, right?

A.    Right.

Q.    Okay. My question is, how do you know for sure it was a real gun? When I asked you to direct—on cross-examination, you said you didn't know, and now you know?

8

A.   Well, sir, how do I know for sure that was a real gun?  I mean, I wasn't shot, but it looked real.  I mean, the only thing I can tell you is that it looked real.  It was pointed at me.  It was big enough.  It was a size of a real gun.  It didn't have any fake or toy qualities about it.  And so—he was using it in a way that it was a real gun.  So that's pretty much the only conclusion I can draw, is that it is real.

Elizabeth Escalante testified that when she started to get out of the SUV, she saw Lusk holding a gun at her husband's stomach.

Viewing this evidence in the light most favorable to the prosecution, the jury could have reasonably believed that Lusk held a real handgun on Escalante when he threatened him and demanded his wallet. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *Wright*, 591 S.W.2d at 459; *Arcenaux*, 177 S.W.3d at 930–31.  Furthermore, viewed in a neutral light, the evidence supporting the deadly weapon finding is not so weak that the jury's determination is clearly wrong and manifestly unjust, and the conflicting evidence—Lusk's testimony that he did not commit the robbery at all—does not so greatly outweigh the evidence supporting the finding such that the jury's determination is manifestly unjust.  *See Watson*, 204 S.W.3d at 414–15, 417; *Wright*, 591 S.W.2d at 459; *Arcenaux*, 177 S.W.3d at 930–31. Therefore, we overrule Lusk's first two points.

### III. Jury Instruction

In his third point, Lusk complains that the trial court erred by refusing to include a lesser included offense instruction to the jury. He claims that he was entitled to a lesser included offense instruction on theft because he testified both that he was not present at the robbery and that he was in possession of the items stolen from Escalante. He argues that the events of the following day—his criminal trespass and the discovery of Escalante's personal property on Lusk—were part of the same transaction such that he was entitled to the requested instruction.

### A. Standard of Review

We use a two-step analysis to determine whether an appellant was entitled to a lesser included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

"An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Ann. art. 37.09(1); *see also Hall*,

10

225 S.W.3d at 536. This inquiry is a question of law. *Hall*, 225 S.W.3d at 535. It does not depend on the evidence to be produced at the trial but is performed by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser included offense. *Id.* at 525, 535–36.

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

**B. Analysis**

Lusk was indicted of having "intentionally or knowingly, *while in the course of committing theft of property* and with intent to obtain or maintain control of said property, threaten[ed] or place[d] Sammy Escalante in fear of

11

imminent bodily injury or death, and . . . used or exhibited a deadly weapon, to-wit: a firearm." [Emphasis added.] Theft is the unlawful appropriation of property with intent to deprive the owner thereof. *See* Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2008). Appropriation of property is unlawful when it is without the owner's effective consent or the property is stolen and the actor appropriates it knowing that it was stolen by another. *See id*. § 31.03(b)(1)–(2). Lusk's argument meets the first step of the analysis. *See Hall*, 225 S.W.3d at 525, 535–36.

Lusk argues that the events of August 20 (robbery) and August 21 (criminal trespass) were one transaction, and that the State and the trial court acknowledged this. The State did allege, in its supplemental notice of evidence of bad acts, that "[p]ursuant to the same criminal transaction/criminal episode as the allegations set forth in the State's indictment, on or about August 21, 2006," Lusk committed the offense of criminal trespass and was in possession of Escalante's belongings. However, the record reflects that the trial court overruled Lusk's objection to testimony about the criminal trespass because Lusk had received notice of the State's intent to use these "bad acts," and not, as Lusk argues, because it considered the criminal trespass and possession as part of the same transaction. During the charge conference, Lusk's counsel requested the lesser included offense instruction, arguing that Lusk had

12

admitted to theft of property. The trial court questioned how an admission of theft the day after a robbery could be considered a lesser included offense of an aggravated robbery the previous day and denied the request.

No actual admission of theft appears from the record. Escalante and his wife testified that Lusk robbed Escalante at gunpoint, and they separately identified him in photo lineups and in court. Lusk gave the following testimony.

> Q. [Defense]: Sammy Escavillo—Escalante. Sorry. Did you rob that man?
>
> A. [Lusk]: Never seen him in my life. No.
>
> Q. [Defense]: Did you—the car wash at Butler and Hemphill, were you over there that night that he got robbed?
>
> A. [Lusk]: No, sir, never have been there.

Lusk testified that he left his suitcase and other belongings, including his orange shorts, in Cedric Walker's vehicle on August 20, at around 11:15 a.m.

> Q. [Defense]: And then they [the police] say that they saw . . . the identification of Mr. Escalante and his daughter's picture and his driver's license. All that fell out of your pocket.
>
> A. [Lusk]: Yes, sir.
>
> Q. [Defense]: You heard him testify to that?
>
> A. [Lusk]: Yes, sir.
>
> Q. [Defense]: Did that happen?

13

A. [Lusk]:        Yes, sir.

Q. [Defense]:     Why was that stuff in your pocket?

A. [Lusk]:        Because on the 20th when I had left, when we left that morning on the 20th, I called Walker to see—we went to the Wal-Mart to go shopping. Walker C. drove off and left me. He thought I was going to jail, because he heard the intercom from the 20th around 12:00. Now I had to find a ride back, so I—I finally reached back at the Interstate around about maybe 1:30 or 2, because this Christian gave me a ride, and he say . . .

Q. [Defense]:     Hang on a second. Here's what I'm trying to find out. You said these—this identification was in your pocket when the cops got there, that it fell out of your pocket?

A. [Lusk]:        On the 21st, it was.

Q. [Defense]:     That's what I'm talking about. . . . So what I'm trying to figure out, how did you get that stuff?

A. [Lusk]:        On the night of the 20th -- I mean on the 21st, maybe around about 2:30 or 3, I seen Cedric Walker's car. I approached Cedric Walker's car trying to find out where he was at, but his window was cracked, so I seen some of my items that was in my suitcase in back of Cedric Walker's car.

Q. [Defense]:     So hang on a second. The day the police arrested you, you saw some of your stuff in his car. Is that what you are telling us?

A. [Lusk]:        No. Early on the morning of the 21st, about 2:00, 3:00 on the morning.

14

Lusk testified that he got his clothes and stuff out of the back of Walker's car at that time. According to Lusk, he spent most of August 20 at the motel, waiting for Walker to return so that he could get his suitcase and belongings out of Walker's vehicle.

The State asked Lusk if he denied stealing from Escalante on the night of August 20 and he replied, "Yes, I'm denying it."

Q. [State]: So is it a coincidence that you had on orange shorts within 18 hours of that offense?

A. [Lusk]: It's not a coincidence. That was my shorts I had on. . . . But I didn't have possession of my property.

Q. [State]: So you admit those are your shorts?

A. [Lusk]: Yes, ma'am.

Q. [State]: And you were wearing them?

A. [Lusk]: On the 21st, yes.

Q. [State]: Okay. So you're denying you had them on on the 20th?

A. [Lusk]: Yes, ma'am. I did not.

. . . .

Q. [State]: So you were wearing them the 19th, 20th, and 21st?

A. [Lusk]: No, just the 19th.

15

Q. [State]:     Oh, I see.  You had them on the 19th and the 21st?

A. [Lusk]:      And he was gone with my clothes, so I didn't have any clothes, so when he got back with my clothes, that morning, I changed clothes.

Q. [State]:     So you had them on the 19th and 21st, but not the 20th?

A. [Lusk]:      I had them on on the 19th.  I changed clothes that morning, on the 20th.

Q. [State]:     And so you're saying that Cedric Walker had your orange shorts.  Is that what you're saying?

A. [Lusk]:      Yes, ma'am.  And my—and my suitcase and everything.  All my belongings.

        . . . .

Q. [State]:     And you admitted that you had Sammy Escalante's items, IDs, et cetera, in your pocket in those orange shorts.  You admitted that to your defense attorney, did you not?

A. [Lusk]:      Yes, sir—ma'am.

Q. [State]:     Okay.  And wouldn't you say that's quite a coincidence within 18 hours of the offense?

A. [Lusk]:      No, ma'am, because I got my clothes out of his car.  *Really didn't check the clothes and stuff*.  [Emphasis added.]

        . . . .

Q. [State]:     And I never was clear.  I didn't understand a lot of what you said to your defense attorney.  It

16

was very confusing. Could you tell me again, where did you get the items that were in your pocket that belonged to the victim of the robbery?

A. [Lusk]: In the back of Cedric Walker's car.

Q. [State]: Okay. And where were they in the back of Cedric Walker's car?

A. [Lusk]: Where my clothes was, where my orange shorts and black pants and everything else, and I had tennies there. I grabbed my tennies and my clothes out of there.

Q. [State]: Okay. And when did you put them in his car?

A. [Lusk]: That morning, on the 20th, at 11:00, before I left, before we left the Interstate [motel].

. . . .

Q. [State]: So what you're saying is—your story is, is that Cedric went into your suitcase, took out your blue shirt and orange shorts, put them on, went and committed a robbery, came back, and put them in your suitcase?

A. [Lusk]: They wasn't in the suitcase. I can't say Cedric did it. . . . But he wasn't riding by himself. I don't know who did it.

Q. [State]: Okay. So you're saying some stranger went into your suitcase, got your blue shirt and your orange shorts, and went and committed a robbery, and then put them back in your suitcase?

A. [Lusk]: I can't say who did it. I don't know.

17

Escalante testified that Lusk threatened to kill him and took his wallet at gunpoint, establishing the elements of aggravated robbery. Lusk testified that he did not steal Escalante's possessions and his testimony does not establish when he became aware that they were in his orange shorts, which he contended were not in his possession on the night of the robbery, before they fell out of his pocket at the Interstate Motel during the criminal trespass investigation.

Lusk references *Campbell v. State*, 149 S.W.3d 149 (Tex. Crim. App. 2004), and *Jones v. State*, 984 S.W.2d 254 (Tex. Crim. App. 1998), for the proposition that his testimony gave rise to the lesser charge of theft as part of the same criminal transaction. In *Campbell*, the court stated that no lesser included offense instruction was warranted when the record demonstrated no evidence linking the possession of 8.64 grams of narcotics found in a Cadillac to the possession of less than one gram of narcotics in a truck, which the defendant admitted to at trial. 149 S.W.3d at 155–56. Without the evidentiary link, the lesser offense was merely a separate, unrelated offense, not a lesser included one. *Id.* at 155–56.

In *Jones*, the court held that the defendant, charged with robbery, was entitled to lesser included offense instructions on misdemeanor assault and

18

theft based on the defendant's testimony that he did not commit theft or assault but only acted in self-defense. 984 S.W.2d at 257–58.

Here, as illustrated by Lusk's testimony above, there was no evidence that would have entitled Lusk to a lesser included offense instruction of theft. While the presence of Lusk's orange shorts at both the robbery and the subsequent discovery of Escalante's property in those shorts tends to provide evidentiary links that *Campbell* lacked, Lusk explicitly denied taking Escalante's property, and he never admitted that he appropriated it knowing that it was stolen, or with the specific intent to deprive Escalante of his property. *See* Tex. Penal Code Ann. § 31.03(a); *Thompson v. State*, 244 S.W.3d 357, 363 (Tex. App.—Tyler 2006, pet. dism'd) ("Appropriation must be accompanied by the specific intent to deprive the owner of property."). To the contrary, the reasonable inference for the jury to draw from Lusk's testimony that he did not "check the clothes and stuff" when he recovered them from Walker's vehicle is that he was just as surprised as the police when Escalante's property fell out of the pocket of his orange shorts.

A charge on the lesser included offense is not required when the defendant presents evidence that no offense was committed and there is no evidence otherwise showing that the defendant is guilty of a lesser-included offense. *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001).

19

Because the orange shorts present nothing more than a red herring with regard to theft as a lesser included offense, we overrule Lusk's third issue.

## IV. Conclusion

Having overruled all of Lusk's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 20, 2008