

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00042-CR
No. 02-19-00043-CR
No. 02-19-00044-CR
No. 02-19-00045-CR

_____

JOHNNIE RAYE STRINGER, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court Nos. 1511284D, 1511286D, 1511287D, 1511289D

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Johnnie Raye Stringer appeals from his convictions for aggravated robbery with a deadly weapon. In one point, Stringer argues that the evidence is insufficient to support the jury's verdict that he used or exhibited a deadly weapon because there was no evidence he wielded a real firearm. We affirm.

## Background

On August 21, 2017, Juan Carlos Gonzalez and Irma Camacho, their son Jesus Gonzalez, and Jesus's then-girlfriend Jennifer Galvan-Gonzalez drove from Dallas to Arlington to look at a 2006 Ford Explorer that Juan Carlos had seen advertised for sale on Craigslist. Unbeknownst to them, the Explorer was not for sale; instead, the Craigslist ad was part of Stringer's plan with Robert Horton to rob potential buyers.

When the group arrived at the apartment complex in Arlington, they met with Horton. Juan Carlos and Jesus got out of their truck to look at the Explorer. The two took the truck for a test drive while Irma remained sitting in the front seat of their car and Jennifer was lying in the back seat. When the men returned from the test drive, Juan Carlos asked to see the Explorer's title. Horton testified at trial that because he did not have the title, he claimed that he needed to call his wife. He called Stringer, but Stringer did not answer. Less than a minute later, Stringer approached the Gonzalezes' truck, opened the door, and told them to give him the money. Jennifer told him that "whatever he's looking for [she and Irma did not] have it." Irma then told her, "he has a gun pointed at me." Jennifer looked, saw the gun, and

2

then opened the truck's door slightly and yelled to Jesus for help. Horton, Juan Carlos, and Jesus approached and saw that Stringer had a gun pointed at Irma. Stringer told them he would shoot them if they called the police, but Jennifer called the police anyway.

Jennifer told the 9-1-1 dispatcher that they were being robbed by a man with a gun, and she described Stringer and Horton to the 9-1-1 dispatcher while Stringer and the Gonzalez family were "yelling back and forth," with "Stringer telling them to give [him and Horton] the money," and the Gonzalez family "were all going at it, you know, trying to like tell them to stop." During this scene, Stringer pointed the gun at Jesus and Juan Carlos as well. Eventually, Irma gave him her purse and Jesus gave Stringer $520. Jennifer testified that after they turned over the money, "Mr. Stringer pull[ed] back. And he's still thoughtful. I guess he still wanted to get more out of us. He [raised] the gun. So at that point it was a shocker, it was, like, okay, here goes, like someone's about to get shot." However, instead of demanding more money or using his weapon, Stringer lowered the gun and "then just ran out into—into the complex, like just to get away at that point." Horton had already left by then. Jennifer and the Gonzalez family drove away. After Stringer and Horton left, the dispatcher asked Jennifer to describe the gun. She replied, "the gun . . . what type of gun [is] it?" A male voice can be heard saying, "it was a revolver." Jennifer repeated to the dispatcher that the gun was a revolver, and she described it as "silver, with black." As they were leaving the apartment complex, the police arrived.

Horton also testified at trial. Horton stated that at the time of the robbery, he and Stringer were both residents of Mississippi and that they had come to Texas to visit a friend and "to party, have fun." Horton stated that Stringer came up with the idea to list his vehicle[1] for sale on Craigslist and to rob people who responded to the ad. Horton testified that Stringer had a silver .357 revolver with a black handle. Horton testified that he saw Stringer point the gun at Irma, that Stringer told them "to give him money or he would shoot them," and that he believed Stringer would shoot them. Asked if the gun was big or small, Horton described it as big. Horton did not know when Stringer got the gun.

The State indicted Stringer on four counts of aggravated robbery with a deadly weapon, to wit: a firearm. The jury found him guilty on all four counts and assessed punishment at forty years' confinement for each offense. The trial court sentenced him accordingly and ordered the sentences to run concurrently.

## Discussion

Stringer argues under his sole point that the evidence is insufficient to show that he ever wielded a real firearm. He contends that "[i]f [he] did wield a weapon, it was a BB gun, and the State failed to present any evidence that the BB gun was a

---

[1]Horton testified that Stringer drove them to Texas in the Explorer, and the police found Stringer's driver's license and pay stubs inside, but the Explorer was registered to Cathy Moore, not Stringer. Horton stated that the Explorer's owner was a relative of Stringer's girlfriend.

4

deadly weapon," and therefore "no rational jury could have found the essential elements of aggravated robbery with a deadly weapon beyond a reasonable doubt."

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622.

The Texas Penal Code defines "deadly weapon" as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17). Thus, by definition, a "firearm" is a deadly weapon. *Id.*; *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979) ("A firearm is per se a deadly weapon."). "Gun," on the other hand, is a broad term that includes both firearms and nonlethal instruments such as BB guns. *Arthur v. State*, 11 S.W.3d 386, 389 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see also Lee v. State*, No. 02-17-00379-CR, 2019 WL 3491648, at *2 (Tex. App.—Fort Worth Aug. 1, 2019, pet. ref'd) (mem. op., not designated for publication). However, testimony using the term "gun" or "revolver" is sufficient to

5

authorize the jury to find that a deadly weapon was used when there is no evidence indicating the use of a toy gun or a nonlethal instrument. *Wright*, 591 S.W.2d at 459; *Leadon v. State*, 332 S.W.3d 600, 610 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Wright* and holding that when there was testimony that described the weapon as a "gun" and a "revolver," and there was no evidence indicating that it could have been fake or a toy, the testimony was sufficient to satisfy the element that a deadly weapon was used).

Each of the Gonzalezes testified to seeing Stringer using a gun to threaten them, as did Jennifer Galvan-Gonzalez. Jennifer described the instrument at trial as "an older gun." She "believe[d] it was a revolver, one of those that you have to turn. It was not that big, it was a small, like, handgun." She did not remember the gun's color but believed it was dark. In addition to her testimony, Jennifer's call to 9-1-1, in which she stated that the man robbing them had a revolver that was "silver with black," was played for the jury. Irma described the gun as being big and silver. She believed that it was real and that Stringer was going to shoot her. Juan Carlos and Jesus also testified to seeing the gun and being afraid for their lives. The jury was free to believe this testimony. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ("As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties."); *Wright*, 591 S.W.2d at 459; *Leadon*, 332 S.W.3d at 610.

6

Horton testified that Stringer had a silver .357 revolver with a dark handle; this testimony is consistent with both Irma's testimony that the weapon was silver and Jennifer's testimony that it was dark. Stringer argues that Horton "had great motive to lie"; Horton acknowledged at trial that he had also been charged for his participation in the robbery and that he had accepted a plea deal of five years' confinement on a charge of nonaggravated robbery.[2] However, Horton's testimony that Stringer had a firearm and exhibited it during the robbery was corroborated by testimony from four complainants, and thus the jury had before it nonaccomplice evidence connecting Stringer to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (stating that "direct or circumstantial non[ ]accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense"); *Delacruz v. State*, 278 S.W.3d 483, 487 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (stating that the statutory requirement for evidence corroborating accomplice-witness testimony is fulfilled "[i]f the combined weight of the non[ ]accomplice evidence tends to connect the defendant to the offense").

---

[2]The court's charge included an accomplice-witness instruction. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (providing that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense").

The only suggestion during the testimony at trial that the instrument used by Stringer might not be a firearm came from Stringer's attorney's questions to Jennifer and Irma. The attorney asked Jennifer if she had ever seen a toy gun before (she had), if she saw the tip of the gun (she did), and if she thought she would know the difference between a real gun and a toy gun (she answered that she believed that she would know the difference). Stringer's attorney asked Irma if she had seen the tip of the gun, but she stated that she had not. Stringer's attorney did not ask further questions about the possibility of the gun being a toy. No witness was asked if the gun looked like a BB gun.

In sum, although witnesses presented differing testimony about the size and exact color of the weapon used by Stringer, the five witnesses all testified that he used a weapon. *See Lee*, 2019 WL 3491648, at *4 (holding that based on testimony of witnesses, a rational factfinder could have found beyond a reasonable doubt that the appellant used or exhibited a firearm during the robberies). Three of the witnesses testified that Stringer's exhibition of the gun put them in fear for their lives. *See id.* (describing testimony of several witnesses that they could not tell if the gun exhibited by the robber was real but also stating the gun put them in fear for their safety). Jennifer testified that the weapon looked like a revolver, and Horton confirmed that it was a revolver. No testimony supports a finding that the weapon was a BB gun or a toy. We hold that the evidence is sufficient to support the jury's finding that Stringer

used or exhibited a deadly weapon. *See id.* Accordingly, we overrule Stringer's sole point.

## Conclusion

Having overruled Stringer's sole point, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 27, 2020