COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                          NO.
02-08-012-CR

 

 

GERALD DEWAYNE LUSK                                                     APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

             FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

In three points, Appellant Gerald Lusk appeals
his conviction for aggravated robbery with a deadly weapon.  We affirm.

I. Factual and Procedural History








Samuel Escalante, the complainant, testified that
as he washed his wife=s SUV at a self‑service
car wash around 10:30 p.m., Lusk approached him from behind, held a gun on him,
and demanded his wallet.  Escalante
testified that he gave his wallet to Lusk after Escalante=s wife
opened the passenger side door to find out what was happening and Lusk turned
the weapon on her.  Lusk left with the
wallet, and Escalante=s wife called 911 from her cell
phone.          Escalante described Lusk
as wearing orange shorts and a dark blue tank top.  He described the gun as follows: 

It was a black gun.  It hadCit was not a revolver.  And the handle looked wooden.  He was covering most of it because his hands
were pretty big, and so I didn=t really see the handle, but it looked wooden to
me. . . . But it looked real, and I didn=t want to find out if it was real.

 

He testified that it did not look like something that had been
painted, that he  did not see anything on
it that would make him think that it was a toy gun, and that Lusk used it as if
it were a real gun.

Escalante=s wallet
contained his driver=s license, social security card,
and insurance card, a photo of his daughter, a gas credit card, and work
licenses.  The robbery occurred August
20, 2006. 








On August 21, Fort Worth police officers
responded to a trespassing complaint from the manager of the Interstate Motel,
located two to four miles from the car wash. 
The manager complained of three men that she wanted off of the property,
but she only had a valid trespassing warning against one of themCLusk.  Former officer Waylon Jepson testified that
he had Lusk, as the largest of the three men, sit on the ground for officer
safety while they waited for confirmation on the trespass warning.  When he received confirmation, he arrested
Lusk.  When Lusk stood up, Escalante=s driver=s
license, social security card, and other items fell out of the orange shorts
that Lusk wore.  The police did not
discover the gun or Escalante=s wallet
in Lusk=s
belongings.

A few days later, the police separately showed
photo lineups to Escalante and his wife. 
They each identified Lusk as the man who had robbed Escalante.  At trial, Escalante=s wife
testified, AI am a hundred percent sure of
this man=s face.@

Lusk testified that he did not rob Escalante,
that he had never seen Escalante or his wife before, and that he had never been
to that car wash.  He testified that he
did not go out the night of August 20 and that someone else had his clothing,
including the orange shorts, during that time. 
He admitted that Escalante=s
property fell out of his pocket and that the orange shorts were his, but he
denied committing the robbery.

The jury found Lusk guilty of aggravated robbery
with a deadly weapon.  Lusk pleaded true
to the allegations in the Habitual Offender Notice, the jury assessed
punishment of sixty years= confinement, and the trial court
entered judgment on the verdict and punishment. 
This appeal followed.

 








II. Legal and Factual Sufficiency of the Evidence

In his first two points, Lusk argues that the
evidence was legally and factually insufficient to convict him of aggravated
robbery with a deadly weapon.

A. Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at 414B15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.

B. Aggravated Robbery with a Deadly Weapon

Lusk=s only
complaint with regard to sufficiency is that the evidence was legally and
factually insufficient to show that a deadly weapon was used or exhibited,
arguing that Escalante was not sure if he saw a firearm and that the jury notes
reflect that the jury=s concern was whether the police
thought a firearm was used.








A person commits aggravated robbery with a deadly
weapon if, in the course of committing a theft, he intentionally, knowingly, or
recklessly causes bodily injury to another or places another in fear of such
imminent bodily injury or death by using or exhibiting a deadly weapon.  See Tex. Penal Code Ann. '' 29.02B.03
(Vernon 2003).  A Adeadly
weapon@ is a
firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury. 
Id. ' 1.07(a)(17)(A) (Vernon
Supp. 2008).  Testimony using any of the
terms Agun,@ Apistol,@ or Arevolver@ is
sufficient to authorize the jury to find that a deadly weapon was used.  Wright v. State, 591 S.W.2d 458, 459
(Tex. Crim. App. 1979); Privett v. State, 635 S.W.2d 746, 752 (Tex. App.CHouston
[1st Dist.] 1982, pet. ref=d)
(holding that victim=s statement that defendant
displayed a Agun@ or Apistol@ during
the robbery was sufficient to show use of firearm); see also Brown v. State,
212 S.W.3d 851, 860B63 (Tex. App.CHouston
[1st Dist.] 2006, pet. ref=d) (op.
on reh=g)
(holding that victim=s testimony that he did not know
if the gun was real but that it felt cold against his skin was not sufficient
to contradict the jury=s firearm finding when victim
also testified that he was afraid and his wife testified that it was a gun), cert.
denied, 128 S. Ct. 1088 (2008); Arcenaux v. State, 177 S.W.3d 928,
931 (Tex. App.CHouston [1st Dist.] 2005, pet.
ref=d)
(holding that the evidence was sufficient when victim testified that he never
saw the gun but believed that defendant had a gun and feared for his life when
the defendant told him that he had a gun).

Of the eight notes that the jury submitted, two
involved what the police officers had been told by the complainant.

Jury
Note #5:      Need testimony from either
of the police officers that state the victims reported that a gun was used in
the robbery. 

Jury
Note #7:      We are in dispute as to
whether officer[=]s statement said that the
accused was armed during the robbery.








The trial court responded with four pages of trial transcript from
Jepson=s
testimony.  Jepson testified that on
August 20, 2006, AA call came in from 911, a
victim had reported he had been robbed at gunpoint at the car wash,@ and
that the complainants described a black handgun as having been used.

Notwithstanding Jepson=s
testimony and Lusk=s argument, we must review all
of the evidence in order to determine whether any rational trier of fact could
have found beyond a reasonable doubt that Lusk used or exhibited a deadly weapon.  See Clayton, 235 S.W.3d at 778.


Escalante testified that he first saw Lusk by a
pay phone and that Lusk asked him for a quarter.  Escalante told him that he needed his change
for the car wash and resumed washing his vehicle.  He then testified:

When ICI
started to work my way back around to the point where I started at, and forCI don=t know
what it was, but I could almost feel the presence of someone really, really
close to me, and so it was weird because I had never felt nothing like that
before.  I justCsomething
made me turn around, and I couldCand he
was very close to where I was, just a few feet away.  And so whenCwhen I
turned around and I saw him, he had a gun in one hand, in the right hand, and
with the left hand, he was going, AShh.  Give me your money, or I=ll kill
you.  Give me your wallet, or I=ll kill
you.@

When Lusk=s
counsel asked, ADo you know for sure if this was
a real firearm or not?@ 
Escalante replied, ADid he
shoot it off or do I know, no, I don=t.@  On redirect, the State asked:

Q.     What makes you think it was a real gun?








A.     Well,
it looked real enough to me.  You know, I
don=t know what makes you
feel it=s a real gun, but, I
mean, whenever somebody has a gun to you and they=re using it in that kind
of manner, I mean, it=s real enough.

 

Q.     Seen
many toy guns with wooden grips?

 

A.     No.  No, ma=am.

 

Q.     Did
it look likeCthink defense counsel
mentioned this sometimeCcarved soap painted
black?  Did it look like that?

 

A.     No,
it didn=t look like a toy of any
kind.  I=ve been around long
enough to know the difference between a toy gun and a real gun, and if it had a
woodenCif it looked plastic or
had anything orange on it, no, I wouldn=t have cooperated with him.

 

Q.     From
you looking at the gun, you said it was pointed at your stomach, did you think
it was a real gun?

 

A.     I did.

Lusk=s
counsel followed these questions with his own:

Q.     I
mean, if you had thought there was no realCthis was a real gunCif it had been painted
candy apple red, there probably would have been at least a fight there?

 

A.     Yeah,
he probably would have ate that gun that night.

 

Q.     Okay.  But for whatever reason, you felt it was a
real gun, right?

 

A.     Right.

 

Q.     Okay.  My question is, how do you know for sure it
was a real gun?  When I asked you to
directCon cross‑examination,
you said you didn=t know, and now you know?

 








A.     Well, sir, how do I know for sure that was
a real gun?  I mean, I wasn=t shot,
but it looked real.  I mean, the only
thing I can tell you is that it looked real. 
It was pointed at me.  It was big
enough.  It was a size of a real
gun.  It didn=t have
any fake or toy qualities about it.  And
soChe was
using it in a way that it was a real gun. 
So that=s pretty much the only
conclusion I can draw, is that it is real.

Elizabeth Escalante testified that when she started to get out of the
SUV, she saw Lusk holding a gun at her husband=s
stomach.

Viewing this evidence in the light most favorable
to the prosecution, the jury could have reasonably believed that Lusk held a
real handgun on Escalante when he threatened him and demanded his wallet.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778; Wright, 591 S.W.2d at
459; Arcenaux, 177 S.W.3d at 930B31.  Furthermore, viewed in a neutral light, the
evidence supporting the deadly weapon finding is not so weak that the jury=s
determination is clearly wrong and manifestly unjust, and the conflicting
evidenceCLusk=s
testimony that he did not commit the robbery at allCdoes not
so greatly outweigh the evidence supporting the finding such that the jury=s
determination is manifestly unjust.  See
Watson, 204 S.W.3d at 414B15, 417;
Wright, 591 S.W.2d at 459; Arcenaux, 177 S.W.3d at 930B31.  Therefore, we overrule Lusk=s first
two points.

 

 








III. Jury Instruction

In his third point, Lusk complains that the trial
court erred by refusing to include a lesser included offense instruction to the
jury.  He claims that he was entitled to
a lesser included offense instruction on theft because he testified both that
he was not present at the robbery and that he was in possession of the items
stolen from Escalante.  He argues that
the events of the following dayChis
criminal trespass and the discovery of Escalante=s
personal property on LuskCwere part of the same
transaction such that he was entitled to the requested instruction.

A. Standard of Review

We use a two-step analysis to determine whether
an appellant was entitled to a lesser included offense instruction.  Hall v. State, 225 S.W.3d 524, 528
(Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d 666, 672B73 (Tex.
Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); Moore v.
State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).








AAn offense is a lesser included
offense if . . . it is established by proof of the same or less than all the
facts required to establish the commission of the offense charged.@  Tex. Code Crim. Proc. Ann. art. 37.09(1); see
also Hall, 225 S.W.3d at 536.  This
inquiry is a question of law.  Hall,
225 S.W.3d at 535.  It does not depend on
the evidence to be produced at the trial but is performed by comparing the
elements of the offense as they are alleged in the indictment or information
with the elements of the potential lesser included offense.  Id. at 525, 535B36.

Second, some evidence must exist in the record
that would permit a jury to rationally find that if the appellant is guilty, he
is guilty only of the lesser offense.  Hall,
225 S.W.3d at 536; Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim.
App. 2005); Rousseau, 855 S.W.2d at 672B73.  The evidence must be evaluated in the context
of the entire record.  Moore, 969 S.W.2d
at 8.  There must be some evidence from
which a rational jury could acquit the appellant of the greater offense while
convicting him of the lesser included offense. 
Id.  The court may not
consider whether the evidence is credible, controverted, or in conflict with
other evidence.  Id.  Anything more than a scintilla of evidence
may be sufficient to entitle a defendant to a lesser charge.  Hall, 225 S.W.3d at 536.

B. Analysis 








Lusk was indicted of having Aintentionally
or knowingly, while in the course of committing theft of property and
with intent to obtain or maintain control of said property, threaten[ed] or
place[d] Sammy Escalante in fear of imminent bodily injury or death, and . . .
used or exhibited a deadly weapon, to‑wit: a firearm.@
[Emphasis added.]  Theft is the unlawful
appropriation of property with intent to deprive the owner thereof.  See Tex. Penal Code Ann. '
31.03(a) (Vernon Supp. 2008). 
Appropriation of property is unlawful when it is without the owner=s
effective consent or the property is stolen and the actor appropriates it
knowing that it was stolen by another.  See
id. ' 31.03(b)(1)B(2).  Lusk=s
argument meets the first step of the analysis. 
See Hall, 225 S.W.3d at 525, 535B36.








Lusk argues that the events of August 20
(robbery) and August 21 (criminal trespass) were one transaction, and that the
State and the trial court acknowledged this. 
The State did allege, in its supplemental notice of evidence of bad
acts, that A[p]ursuant to the same criminal
transaction/criminal episode as the allegations set forth in the State=s
indictment, on or about August 21, 2006,@ Lusk
committed the offense of criminal trespass and was in possession of Escalante=s
belongings.  However, the record reflects
that the trial court overruled Lusk=s
objection to testimony about the criminal trespass because Lusk had received
notice of the State=s intent to use these Abad
acts,@ and
not, as Lusk argues, because it considered the criminal trespass and possession
as part of the same transaction.  During
the charge conference, Lusk=s
counsel requested the lesser included offense instruction, arguing that Lusk
had admitted to theft of property.  The
trial court questioned how an admission of theft the day after a robbery could
be considered a lesser included offense of an aggravated robbery the previous
day and denied the request.

No actual admission of theft appears from the
record.  Escalante and his wife testified
that Lusk robbed Escalante at gunpoint, and they separately identified him in
photo lineups and in court.  Lusk gave
the following testimony.

Q. [Defense]:       Sammy
EscavilloCEscalante.  Sorry. 
Did  you rob that man?

 

A. [Lusk]:            Never
seen him in my life.  No.

 

Q. [Defense]:       Did
youCthe car wash at Butler
and Hemphill, were you over there that night that he got robbed?

 

A.
[Lusk]:            No, sir, never have
been there.

Lusk testified that he left his suitcase and other belongings,
including his orange shorts, in Cedric Walker=s
vehicle on August 20, at around 11:15 a.m.

Q. [Defense]:       And
then they [the police] say that they saw . . . the identification of Mr.
Escalante and his daughter=s picture and his driver=s license.  All that fell out of your pocket.

 

A. [Lusk]:            Yes,
sir.

 

Q. [Defense]:       You
heard him testify to that?

 

A. [Lusk]:            Yes,
sir.

 

Q. [Defense]:       Did
that happen?








A. [Lusk]:            Yes,
sir.

 

Q. [Defense]:       Why
was that stuff in your pocket?

 

A. [Lusk]:            Because
on the 20th when I had left, when we left that morning on the 20th, I called
Walker to seeCwe went to the Wal‑Mart
to go shopping.  Walker C. drove off and
left me.  He thought I was going to jail,
because he heard the intercom from the 20th around 12:00.  Now I had to find a ride back, so ICI finally reached back at
the Interstate around about maybe 1:30 or 2, because this Christian gave me a
ride, and he say . . . 

 

Q. [Defense]:       Hang
on a second.  Here=s what I=m trying to find
out.  You said theseCthis identification was
in your pocket when the cops got there, that it fell out of your pocket?

 

A. [Lusk]:            On
the 21st, it was.

 

Q. [Defense]:       That=s what I=m talking about. . . . So
what I=m trying to figure out,
how did you get that stuff?

 

A. [Lusk]:            On
the night of the 20th ‑‑ I mean on the 21st, maybe around about
2:30 or 3, I seen Cedric Walker=s car.  I
approached Cedric Walker=s car trying to find out
where he was at, but his window was cracked, so I seen some of my items that
was in my suitcase in back of Cedric Walker=s car.

 

Q. [Defense]:       So
hang on a second.  The day the police
arrested you, you saw some of your stuff in his car.  Is that what you are telling us?

 

A. [Lusk]:            No.  Early on the morning of the 21st, about 2:00,
3:00 on the morning. 








Lusk testified that he got his clothes and stuff out of the back of
Walker=s car at
that time.  According to Lusk, he spent
most of August 20 at the motel, waiting for Walker to return so that he could get
his suitcase and belongings out of Walker=s
vehicle.

The State asked Lusk if he denied stealing from
Escalante on the night of August 20 and he replied, AYes, I=m
denying it.@

Q. [State]:           So
is it a coincidence that you had on orange shorts within 18 hours of that
offense?

 

A. [Lusk]:            It=s not a coincidence.  That was my shorts I had on. . . . But I didn=t have possession of my
property.

 

Q. [State]:           So
you admit those are your shorts?

 

A. [Lusk]:            Yes,
ma=am.

 

Q. [State]:           And
you were wearing them?

 

A. [Lusk]:            On
the 21st, yes.

 

Q. [State]:           Okay.  So you=re denying you had them on on the 20th?

 

A. [Lusk]:            Yes,
ma=am.  I did not.

 

. . . .

 

Q. [State]:           So
you were wearing them the 19th, 20th, and 21st?

 

A. [Lusk]:            No,
just the 19th.

 








Q. [State]:           Oh,
I see.  You had them on the 19th and the
21st?    

 

A. [Lusk]:            And
he was gone with my clothes, so I didn=t have any clothes, so when he got back with my
clothes, that morning, I changed clothes.

 

Q. [State]:           So
you had them on the 19th and 21st, but not the 20th?

 

A. [Lusk]:            I
had them on on the 19th.  I changed
clothes that morning, on the 20th.

 

Q. [State]:           And
so you=re saying that Cedric
Walker had your orange shorts.  Is that
what you=re saying?

 

A. [Lusk]:            Yes,
ma=am.  And myCand my suitcase and everything.  All my belongings.

 

. . . .

 

Q. [State]:           And
you admitted that you had Sammy Escalante=s items, IDs, et cetera, in your pocket in those
orange shorts.  You admitted that to your
defense attorney, did you not?

 

A. [Lusk]:            Yes,
sirCma=am.

 

Q. [State]:           Okay.  And wouldn=t you say that=s quite a coincidence within 18 hours of the
offense?

 

A. [Lusk]:            No,
ma=am, because I got my
clothes out of his car.  Really didn=t check the clothes and
stuff.
[Emphasis added.]

 

. . . .

 








Q. [State]:  
        And I never was clear.  I didn=t understand a lot of what you said to your
defense attorney.  It was very
confusing.  Could you tell me again,
where did you get the items that were in your pocket that belonged to the
victim of the robbery?    

 

A. [Lusk]:            In
the back of Cedric Walker=s car.

 

Q. [State]: Okay.  And where were they in the back of Cedric
Walker=s car?

 

A. [Lusk]:            Where
my clothes was, where my orange shorts and black pants and everything else, and
I had tennies there.  I grabbed my
tennies and my clothes out of there.

 

Q. [State]:           Okay.  And when did you put them in his car?

 

A. [Lusk]:            That
morning, on the 20th, at 11:00, before I left, before we left the Interstate
[motel].

 

. . . .

 

Q. [State]:           So
what you=re saying isCyour story is, is that
Cedric went into your suitcase, took out your blue shirt and orange shorts, put
them on, went and committed a robbery, came back, and put them in your
suitcase?

 

A. [Lusk]:            They
wasn=t in the suitcase.  I can=t say Cedric did it. . . . But he wasn=t riding by himself.  I don=t know who did it.

 

Q. [State]:           Okay.  So you=re saying some stranger went into your suitcase,
got your blue shirt and your orange shorts, and went and committed a robbery,
and then put them back in your suitcase?

 

A.
[Lusk]:             I can=t say who did it.  I don=t know.








Escalante testified that Lusk threatened to kill
him and took his wallet at gunpoint, establishing the elements of aggravated
robbery.  Lusk testified that he did not
steal Escalante=s possessions and his testimony
does not establish when he became aware that they were in his orange shorts,
which he contended were not in his possession on the night of the robbery,
before they fell out of his pocket at the Interstate Motel during the criminal
trespass investigation.

Lusk references Campbell v. State, 149
S.W.3d 149 (Tex. Crim. App. 2004), and Jones v. State, 984 S.W.2d 254
(Tex. Crim. App. 1998), for the proposition that his testimony gave rise to the
lesser charge of theft as part of the same criminal transaction.  In Campbell, the court stated that no
lesser included offense instruction was warranted when the record demonstrated
no evidence linking the possession of 8.64 grams of narcotics found in a
Cadillac to the possession of less than one gram of narcotics in a truck, which
the defendant admitted to at trial.  149
S.W.3d at 155B56.  Without the evidentiary link, the lesser
offense was merely a separate, unrelated offense, not a lesser included
one.  Id. at 155B56.








In Jones, the court held that the
defendant, charged with robbery, was entitled to lesser included offense
instructions on misdemeanor assault and theft based on the defendant=s
testimony that he did not commit theft or assault but only acted in
self-defense.  984 S.W.2d at 257B58.

Here, as illustrated by Lusk=s
testimony above, there was no evidence that would have entitled Lusk to a
lesser included offense instruction of theft. 
While the presence of Lusk=s orange
shorts at both the robbery and the subsequent discovery of Escalante=s
property in those shorts tends to provide evidentiary links that Campbell
lacked, Lusk explicitly denied taking Escalante=s
property, and he never admitted that he appropriated it knowing that it was
stolen, or with the specific intent to deprive Escalante of his property.  See Tex. Penal Code Ann. ' 31.03(a);
Thompson v. State, 244 S.W.3d 357, 363 (Tex. App.CTyler
2006, pet. dism=d) (AAppropriation
must be accompanied by the specific intent to deprive the owner of property.@).  To the contrary, the reasonable inference for
the jury to draw from Lusk=s
testimony that he did not Acheck
the clothes and stuff@ when he recovered them from
Walker=s
vehicle is that he was just as surprised as the police when Escalante=s
property fell out of the pocket of his orange shorts.








A charge on the lesser included offense is not
required when the defendant presents evidence that no offense was committed and
there is no evidence otherwise showing that the defendant is guilty of a lesser‑included
offense.  Lofton v. State, 45
S.W.3d 649, 652 (Tex. Crim. App. 2001). 
Because the orange shorts present nothing more than a red herring with
regard to theft as a lesser included offense, we overrule Lusk=s third
issue.

IV. Conclusion

Having overruled all of Lusk=s
issues, we affirm the trial court=s
judgment.

 

PER
CURIAM

 

PANEL: MCCOY, J.; CAYCE,
C.J.; and WALKER, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: November 20,
2008

 











[1]See Tex. R. App. P. 47.4.