**MODIFY and AFFIRM; and Opinion Filed November 4, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00369-CR

**TIRAY I. OATES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1576109-R**

## MEMORANDUM OPINION

Before Justices Fillmore, Brown, and Richter[1]
Opinion by Justice Fillmore

A jury found appellant Tiray I. Oates guilty of aggravated robbery with a deadly weapon and assessed punishment of seventeen years' confinement. In two points of error, Oates contends there was insufficient evidence that he used a firearm during the commission of the robbery and the punishment phase jury charge erroneously deleted portions of mandatory jury instructions regarding good-conduct time. We modify the judgment. As modified, we affirm the judgment.

### Background

Oates was charged with a June 24, 2015 aggravated robbery of the complainant A.M.[2] in Dallas, Texas, by "intentionally and knowingly, while in the course of committing theft of

---

[1] The Hon. Martin Richter, Justice, Assigned.

property and with intent to obtain or maintain control of said property, threaten[ing] and plac[ing] [A.M.] in fear of imminent bodily injury and death, and defendant used and exhibited a deadly weapon: to-wit: A FIREARM." The jury rejected the lesser-included offense of robbery, found Oates guilty of aggravated robbery with a deadly weapon as charged in the indictment, and assessed punishment of seventeen years' confinement. Oates filed this appeal.

## Sufficiency of the Evidence

Oates does not contend the evidence was insufficient to find him guilty of robbery. In fact, in his appellate brief, Oates states he "and two of his friends, twin brothers D.K. and K.K.,[3] committed a robbery around 10:00 p.m. on June 24, 2015." In his first point of error, Oates asserts the evidence was insufficient to support his conviction for aggravated robbery. Specifically, Oates contends there was insufficient evidence that "the object [Oates] used during the robbery," which was not recovered after the robbery, "was actually a firearm."

### Standard of Review

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Fernandez*, 479 S.W.3d at 837–38. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The factfinder is entitled to judge the credibility of the witnesses, and can choose to

---

[2] In this opinion, we identify the minors A.M., F.W., M.W., and J.R. by their initials.

[3] Although the record does not establish whether D.K. and K.K. were minors, their initials are used in appellant's brief, implying they were minors. Therefore, we have also referred to them in this opinion by their initials.

believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence.").

We defer to the factfinder's determinations of credibility, and may not substitute our judgment for that of the factfinder. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury"). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence and, alone, can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903. A verdict of guilt will be upheld if the evidence is sufficient on any one of the theories submitted. *See Hooper*, 214 S.W.3d at 14.

## *Discussion*[4]

Complainant A.M. testified that on the night of June 24, 2015, he was walking through a breezeway between two apartment buildings with F.W., M.W., Trey,[5] and A.M.'s cousin, J.R. Twin brothers, D.K. and K.K., approached and attempted to rob A.M. of his wallet, money, cell

---

[4] Oates has not challenged the sufficiency of the evidence that he robbed A.M. on June 24, 2015. Therefore, we recite only those facts necessary to address Oates's point of error on appeal that there was insufficient evidence he exhibited or used a firearm during the commission of that robbery.

[5] Trey's surname is not included in the record.

phone, and car keys. One of the twins pushed A.M. into some bushes. A.M. began fighting back, and F.W. and J.R. tried to help him. Oates, who was with D.K. and K.K., "pulled a gun" and placed it on J.R.'s chest and stated, "It ain't worth your life." A.M. indicated the gun Oates was holding as looked like a "police gun." A.M. said the top portion of the gun was gray and he could see his reflection on that part of the pistol. A.M. described the gun as a semiautomatic pistol; it was not a revolver and looked different than a pellet or "soft air gun." A.M. testified the hole in the barrel of the gun was larger than the hole in the barrel of a pellet gun. A.M. indicated he had seen a real gun before. The gun Oates held looked like a real gun to A.M., and there was no doubt in his mind the gun Oates pulled out was a real gun. A.M. could tell the gun was made of a hard material and it hurt when Oates put the gun to J.R.'s chest. A.M. feared for his life and surrendered his personal belongings, including his car keys. A.M. stated he would not have surrendered his personal belongings if he had thought Oates had displayed a fake gun.

J.R. testified that when he came around the corner of the breezeway between the apartment buildings, A.M. was fighting with one of the twins and the other twin kicked A.M. J.R. tried to help A.M., and Oates pulled out a gun and placed the barrel of the gun to J.R.'s chest. After Oates placed the gun to J.R.'s chest, he said, "Move around," and "something about losing your life." J.R. stated he felt pain from having the gun pressed into his chest but also stated it did not hurt. To J.R., the gun did not feel like a plastic BB gun or "air soft gun"; it felt to him like a real gun. J.R. stated he did not really remember what the gun looked like, but he had been around pellet or BB guns, and the gun Oates used did not resemble a pellet or BB gun. J.R. testified he knew the gun was a real handgun. In an affidavit signed after the incident, J.R. described Oates's gun as gray on the top and black on the bottom.

F.W. testified that when he tried to grab the twin who was fighting with A.M., Oates pulled out a gun. F.W. stated Oates put the barrel of the gun to J.R.'s head. F.W. testified the

–4–

gun Oates used looked real to him, but F.W. acknowledged he does not know whether the gun was real or fake.

A person commits aggravated robbery if, during the course of a robbery, the person uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). The penal code defines a "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17) (West Supp. 2016). "Use" of a deadly weapon during the commission of the offense means the deadly weapon "was employed or utilized in order to achieve its purpose." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). To "exhibit" a deadly weapon means the weapon was "consciously shown or displayed during the commission of the offense." *Id*.

When, as here, the State alleges in an indictment for aggravated robbery that the deadly weapon used by the defendant was a firearm, it is required to prove use of a firearm beyond a reasonable doubt. *See Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985); *Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). A jury may make the reasonable inference from the victim's testimony that the "gun" used in the commission of a crime was, in fact, a firearm. *See Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979) (jury may draw reasonable inference that a deadly weapon has been used from witness testimony using the terms "gun," "pistol," or "revolver"); *Joseph v. State*, 681 S.W.2d 738, 739 (Tex. App.—Houston [14th Dist.] 1984, no pet.) (absent any specific indication to the contrary at trial, a "gun" is a firearm); *Riddick v. State*, 624 S.W.2d 709, 711 (Tex. App.—Houston [14th Dist.] 1981, no pet.). Threatening the victim with a gun, "in itself suggests that it is a firearm rather than merely a gun of the non-lethal variety," such as "BB guns, blow guns, pop guns, and grease guns." *Cruz*, 238 S.W.3d at 388–89 (citing *O'Briant v. State*, 556 S.W.2d 333, 336 (Tex. Crim.

App. 1977)); *see also Davis v. State*, 180 S.W.3d 277, 286 (Tex. App.—Texarkana 2005, no pet.) (victim testified defendant pointed a gun at her and she was afraid she was going to die; appellate court found this presented sufficient evidence for jury to find weapon used was a firearm).

Viewing the evidence in the light most favorable to the jury's verdict, the evidence, and reasonable inferences that can be drawn from the evidence, were sufficient for the jury to find the gun Oates used or exhibited in the robbery was, in fact, a firearm. *See Wright*, 591 S.W.2d at 459; *Cruz*, 238 S.W.3d at 388–89; *Davis*, 180 S.W.3d at 286. We conclude a rational juror could have found beyond a reasonable doubt that Oates used or exhibited a firearm during the robbery. Accordingly, we resolve Oates's first point of error against him.

### Jury Instructions

In his second point of error, Oates asserts the trial court violated its duty to provide the jury instruction statutorily mandated by article 37.07, section 4(a) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2016). Oates argues he was egregiously harmed by the incomplete version of the section 4(a) jury instruction submitted to the jury, which omitted portions of the statutory instruction relating to good-conduct time credits, because it erroneously conveyed he would receive good-conduct time credits and "encouraged the jury to set [Oates]'s sentence with reference to its estimate of his non-existent good conduct time credits." The State acknowledges that the entire article 37.07, section 4(a) instruction should have been given to the jury as mandated by statute but argues Oates was not egregiously harmed by the error, and the omitted portion of the statutorily mandated section 4(a) jury instruction benefitted, rather than harmed, Oates.

Our first duty in analyzing a jury charge issue is to decide whether error exists. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). In this case, the State concedes there was error in the punishment phase jury instruction. Where error exists in the jury charge, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as in this case, the error was not objected to, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury charge error. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Villarreal*, 453 S.W.3d at 433. "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider "(1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Id.* (citing *Almanza*, 686 S.W.2d at 171).

*Discussion*

Having been convicted of the first-degree felony of aggravated robbery with a deadly weapon, Oates was ineligible for mandatory supervision. *See* TEX. GOV'T CODE ANN.

§ 508.149(a)(1), (12) (West Supp. 2016); TEX. PENAL CODE ANN. § 29.03(b). Oates acknowledges in his appellate brief that, because he was not eligible for release on mandatory supervision, he could not receive good-conduct time credits. *See Parker v. State*, 119 S.W.3d 350, 356 (Tex. App.—Waco 2003, pet. ref'd) ("If an inmate is not released on parole, he *may* be released on 'mandatory supervision' when his actual time served plus good conduct time equals his sentence. But, for certain crimes, including aggravated robbery, or when there is an entry in the judgment that a deadly weapon was used, 'mandatory supervision' is not available and so the accumulation of good conduct time becomes irrelevant.") (internal citations omitted).[6] Despite Oates's ineligibility for good-conduct time credit, the trial court was required to instruct the jury in conformity with article 37.07, section 4(a) of the code of criminal procedure, including the provisions of the statutory instruction regarding good-conduct time. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (good-conduct time instruction is required in cases in which the jury assesses punishment and the charged offense is listed in section 3g(a)(1) of article 42.12, or the verdict contains affirmative finding deadly weapon was used or exhibited during commission of felony offense); *id*. 42.12, § 3g(a) (West Supp. 2016); *see also Cagle v. State*, 23 S.W.3d 590, 593 (Tex. App.—Fort Worth 2000, pet. ref'd) (article 37.07 contains mandatory universal charge applicable to all non-capital felonies listed under code of criminal procedure article 42.12, section 3g(a)).[7]

The jury here should have been charged pursuant to article 37.07, section 4(a), which provides:

---

[6] *See also James v. State*, No. 05-02-01910-CR, 2003 WL 23024806, at *3 (Tex. App.—Dallas Dec. 30, 2003, pet. ref'd) (not designated for publication) (appellant convicted of aggravated robbery and aggravated kidnapping ineligible for good-conduct time credits).

[7] *See also Bohanon v. State*, No. 05-01-01411-CR, 2003 WL 22462545, at *3 (Tex. App.—Dallas Oct. 31, 2003, no pet.) (not designated for publication) (appellant who was ineligible for good-conduct time credit because of aggravated robbery conviction complained of jury charge containing statutorily mandated article 37.07, section 4(a) language regarding good-conduct time credit; trial judge who follows legislative mandate and instructs jury according to article 37.07, section 4(a) when defendant is not eligible for good-conduct time does not commit statutory error).

"Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

"It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time the defendant may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

"It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a). In pertinent part, the jury charge here provided:

It is possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law; however, you are not to consider the manner in which the parole law may be applied to this particular defendant.

–9–

Although the trial court charged the jury on parole law, it failed to include statutorily mandated instruction regarding good-conduct time. *See Igo v. State*, 210 S.W.3d 645, 646 (Tex. Crim. App. 2006) (jury should have been instructed defendant would not become eligible for parole until the actual time served, without considering good-conduct time, equaled one-half of the sentence imposed). We agree with Oates that the jury instruction given by the trial judge was erroneous because it did not comply with article 37.07, section 4(a) of the code of criminal procedure.

Oates did not object to the erroneous jury charge. Accordingly, we analyze whether the error was so egregious and created such harm that it denied Oates a fair and impartial trial. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016) (if defendant did not timely object to jury instructions, then reversal is required only if the error was so egregious and created such harm that defendant did not have a fair and impartial trial); *Villarreal*, 453 S.W.3d at 433. When assessing harm arising from jury charge error, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. In an unpublished per curiam opinion, the court of criminal appeals has held that an appellate court improperly limits its harm analysis when it does not address all of the *Almanza* factors. *See Dougherty v. State*, PD-1411-05, 2006 WL 475802, at \*1 (Tex. Crim. App. Mar. 1, 2006) (per curiam) (not designated for publication) (citing *Almanza*, 686 S.W.2d at 157).[8] Therefore, our analysis includes consideration of all four *Almanza* factors.

---

[8] *See also Davis v. State*, No. 05-13-00200-CR, 2014 WL 1778269, at \*12 (Tex. App.—Dallas May 1, 2014, pet. ref'd) (not designated for publication).

The first *Almanza* factor requires consideration of the entire jury charge. *See Almanza*, 686 S.W.2d at 171. The only error Oates asserts in the punishment phase jury charge is the omission of good-conduct time instructions contained in section 4(a) of article 37.07. The jury was informed of the range of punishment; informed of the potential for community supervision; instructed to limit its deliberations, under the law and evidence in the case, to the question of punishment; admonished not to take into consideration Oates's decision not to testify; and instructed not to consider how parole may be applied to Oates when assessing punishment. Absent evidence to the contrary, we presume the jurors understood and followed the trial court's instructions in the jury charge, *see Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. Ap. 2011), and Oates has failed to show otherwise.

The article 37.07, section 4(a) jury instruction is designed to benefit the State, not the defendant. The instruction was designed to increase sentences by informing juries "good-conduct time combines with actual time served to determine parole eligibility." *Grigsby v. State*, 833 S.W.2d 573, 576 (Tex. App.—Dallas 1992, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a). As this Court stated in *Grigsby*, "[w]e fail to see how *not* giving a charge meant to increase the length of a sentence harms an appellant." *Grigsby*, 833 S.W.2d at 576.[9] Oates has failed to establish a reasonable probability that had the jury been provided the complete article 37.07, section 4(a) instruction that included information regarding good-conduct time, he would have received a lesser sentence. We cannot conclude the jury charge that omitted references to good-conduct time credits for which Oates was not eligible harmed Oates. The jury charge as a whole does not weigh in favor of concluding Oates was egregiously harmed.

---

[9] *See also Guzman v. State*, No. 05-03-00465-CR, 2004 WL 406390, at *2 (Tex. App.—Dallas Mar. 5, 2004, pet. ref'd) (not designated for publication) (it is the State, not the defendant, that benefits from the parole law instructions).

With respect to the second *Almanza* factor to be considered, the "state of the evidence," *see Almanza*, 686 S.W.2d at 171, Oates does not contend the evidence was insufficient to find him guilty of robbery. In fact, in his appellate brief, Oates states that he and D.K. and K.K. committed the robbery. The only challenge Oates presents concerning the sufficiency of the evidence to support his conviction for aggravated robbery is whether the evidence was sufficient for the jury to find that a firearm was used or exhibited during that robbery. After setting out the testimony of A.M., J.R., and F.W. above, we concluded a rational juror could have found beyond a reasonable doubt that Oates used or exhibited a firearm during the robbery.

At the punishment phase of trial, evidence was admitted indicating that while Oates was in jail following his arrest on this charge, he engaged in a physical altercation and joined a "clique" of inmates who tried to take charge of the area where they were housed. The jury also heard the testimony of Detective Ken Schwartz of the Dallas Police Department that Oates was a member of a gang and that A.M., J.R., F.W., M.W., and Trey were not documented gang members. Photographs admitted into evidence that Oates had posted on social media two months before the robbery showed him posing with guns and making gang hand signs. The photographs also showed what appeared to be marijuana. Oates stipulated to prior juvenile adjudications for burglaries of a building and a house and making a terroristic threat, and those juvenile adjudications were introduced into evidence.

The jury convicted Oates of aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03(b). The punishment range for the offense was life or a term of five to ninety-nine years and a possible fine not to exceed $10,000. *See id*. § 12.32 (West 2011). The jury assessed punishment of seventeen years' confinement and no fine. That sentence falls at the lower end of the range of punishment. The evidence admitted at the punishment phase of trial provided ample support for the punishment assessed and does not suggest that harm resulted

–12–

from the erroneous jury charge. This factor does not weigh in favor of concluding Oates was egregiously harmed.

The third *Almanza* factor pertains to the arguments of counsel. *See Almanza*, 686 S.W.2d at 171. The State waived its right to proceed first with its punishment phase closing argument. During the punishment phase closing argument of the defense, trial counsel emphasized Oates was only twenty-one years old at the time of trial and requested the jury consider Oates's age in assessing punishment. Counsel stated the jury could send Oates to prison for the rest of his life, but he did not think that would be appropriate and did not believe the State thought it would be appropriate. Oates's counsel asked that the jury assess a punishment of less than ten years' confinement and recommend that the judge place Oates on probation. The prosecutor closed by stating the punishment range for this offense was confinement for life or a term from five years to ninety-nine years, but argued this case warranted an assessment of punishment "somewhere in the middle" and this "isn't a case for probation." Like Oates's counsel, the prosecutor noted Oates is young, and the prosecutor stated, Oates is "going to come out of prison at some point" still having "plenty of life ahead of him," and "[w]hether he comes out in 40, or 50, or 35, whatever age you guys decide is appropriate, he'll come out with a lot of life ahead of him . . . ."

Oates asserts that the prosecutor's statement that Oates would come out of prison at "whatever age you guys decide," asked the jury "to set Oates's release date according to [its] estimate of [Oates]'s good conduct time credits." However, neither Oates's counsel nor the prosecutor discussed parole law or good-conduct time, or Oates's ineligibility for good-conduct time, during their closing arguments. *See Luquis v. State*, 72 S.W.3d 355, 367 (Tex. Crim. App. 2002) (noting neither the prosecutor nor the defense attorney discussed good-conduct time in argument or urged the jury to assess a greater or lesser sentence based upon any potential good-conduct time credit). Rather, when referring to the fact the jury could sentence Oates to a prison

term that would ensure he had life ahead of him once released, the prosecutor was simply arguing the State's position that the case warranted punishment "somewhere in the middle" of the statutorily authorized term of five to ninety-nine years. We find nothing in the State's closing arguments indicating the State requested the jury to consider good-conduct time credits in assessing Oates's punishment. The third *Almanza* factor does not weigh in favor of concluding Oates was egregiously harmed.

The fourth *Almanza* factor requires that we assess any other relevant information revealed by the record of the trial as a whole that would have a bearing on whether Oates suffered egregious harm. *See Almanza*, 686 S.W.2d at 171. Oates argues that a jury note sent to the trial judge during the guilt–innocence phase of deliberations constitutes such "relevant information." During its deliberations concerning Oates's guilt, the jury sent a note to the trial judge asking, "Is there any way to find out <u>now</u> what the difference is between sentencing term for aggravated robbery vs robbery?" The trial court responded in writing to the jurors that they had the law and evidence applicable to the case. The fact jurors posed a question during guilt-innocence phase deliberations concerning the statutory punishment ranges for the offenses of aggravated robbery and robbery does not suggest Oates was egregiously harmed by the parole instruction contained in the punishment phase jury charge. At the time the jury considered punishment, it had already convicted Oates of aggravated robbery, and the punishment phase jury charge set forth the proper range of punishment for the offense of aggravated robbery. During the jury's deliberations on punishment, there was no communication between the jury and the trial judge regarding the parole instruction or the possible application of parole law to Oates. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.) (op. on reh'g). Nothing in the record suggests the jury discussed, considered, or attempted to apply any aspect of parole law to Oates despite the judicial admonition in the jury charge not to do so. Oates has presented no evidence

showing the jury was misled by the parole law charge actually given or increased his sentence based on the absence of the portions of the article 37.07, section 4(a) instruction regarding good-conduct time, for which he was not eligible. *See Bolden v. State*, 73 S.W.3d 428, 434 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (error in omitting "good conduct time" portion of parole instruction in jury charge was not reversible because appellant did not identify any "actual" harm, but instead relied upon mere speculation regarding what jury might have considered). The fourth *Almanza* factor does not weigh in favor of concluding Oates was egregiously harmed.

Based on this record and in light of the *Almanza* factors, we are unable to conclude Oates suffered egregious harm from the erroneous jury instruction concerning parole eligibility. Under the standards necessary to show egregious harm, we conclude that the erroneous jury instruction did not deprive Oates of a fair and impartial trial or affect the very basis of the case, deprive him of a valuable right, or vitally affect a defensive theory. *See Villarreal*, 453 S.W.3d at 433. We resolve Oates's second point of error against him.

## Judgment Modification

Where, as here, the record provides the necessary information to correct inaccuracies in a trial court's judgment, we have the authority to reform the judgment to speak the truth. TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Our review of the record confirms the jury found Oates guilty of aggravated robbery using or exhibiting a deadly weapon—a firearm—as charged in the indictment. The judgment incorrectly reflects "N/A" as to "Findings on Deadly Weapon." Accordingly, we modify the judgment to reflect "Yes, Firearm" to the "Findings on Deadly Weapon."

**Conclusion**

The judgment of the trial court is modified to reflect "Yes, Firearm" to the "Findings on Deadly Weapon." As modified, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

160369F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TIRAY I. OATES, Appellant

No. 05-16-00369-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. F-1576109-R.
Opinion delivered by Justice Fillmore,
Justices Brown and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect "Yes, Firearm" to the "Findings on Deadly Weapon." As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of November, 2016.